UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 AUG -1  AM 8:31
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| ERIK SALAIZ, <br><br> Plaintiff, <br><br> v. <br><br> AUTO TRUCK TRANSPORT USA, LLC a Wisconsin Limited Liability Company and **SLICK INNOVATIONS, LLC** a New York Limited Liability Company <br> **Defendants.** | §§§§§§§§§§§§§§ |

EP22CV0260

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.  The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2.  Defendant AUTO TRUCK TRANSPORT USA, LLC ("Transport") is a limited liability company organized and existing under the laws of Wisconsin with its principal address at 10801 Corporate Drive, Pleasant Prairie, Wisconsin 53158, and is a registered foreign limited liability company in Texas and can be served via registered agent Corporation Service Company DBA CSC-Lawyers, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3.  Defendant SLICK INNOVATIONS, LLC ("Slick") is a limited liability company organized and existing under the laws of New York and can be served via registered agent The LLC at 301 E. Second Street, Suite 302, Jamestown, New York, 14701.

4.  Defendants Transport and Slick are hereinafter referred to collectively as ("Defendants").

1

## JURISDICTION AND VENUE

5. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' automated text messages to Plaintiff; adds little complexity to the case.

6. Personal Jurisdiction. This Court has general personal jurisdiction over the defendants because they have repeatedly placed automated text messages to Texas residents, derive revenue from Texas businesses, and they solicit Defendant Transport's employment opportunities to Texas residents, including the Plaintiff. Defendant Transport is a Foreign Texas Corporation and maintains a registered agent within the Western District of Texas.

7. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the automated text messages soliciting Defendant Transport's employment opportunities were directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single automated text message from the Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the defendants because the automated text messages at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

22. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

23. One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

24. An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

25. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

26. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

27. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

28. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

29. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

30. Plaintiff's personal cell phone (915) 929-1527 has been registered on the National Do-Not-Call Registry since March 6, 2022.

31. Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

32. Defendant Slick offer a platform that allows businesses to send automated text messages ("text blast") to thousands of consumers *en masse* at one time to solicit their goods and services.

33. Defendant Transport hired and authorized Defendant Slick for their text blast platform to make unauthorized automated text messages ("the text messages") to thousands of consumers *en masse* using an ATDS to solicit Defendant Transport's employment opportunities.

34. Defendant Transport approves of the contracts with Defendant Slick.

35. Defendant Transport pays Defendant Slick out of bank accounts they own and control.

36. Defendant Transport are well aware that the text messages being made on their behalf soliciting their employment opportunities violate the TCPA.

37. Defendant Slick is well aware that when Defendant Transport uses their text blast platform it violates the TCPA and refuses to stop doing business with them because doing so benefits them financially when Defendant Transport pays them a fee to use their text blast platform.

38. Defendant Transport is a transportation company that offers ground transportation of goods nationwide including in Texas.

39. The text messages Plaintiff received from Defendants to solicit Defendant Transport's employment opportunities were made using Defendant Slick's text blast platform,

40. Plaintiff does not have any prior existing business relationships with Defendant Transport. Plaintiff has never been a customer or client of Defendant Transport.

41. Plaintiff does not have any prior existing business relationship with Defendant Slick. Plaintiff has never been a customer or client of Defendant Slick.

42. Plaintiff did not give Defendants his prior express written consent to receive the text messages.

43. The text messages Plaintiff received from Defendant Slick's platform were generated and sent using an ATDS at the apparent control and authorization of Defendant Transport.

44. Plaintiff received at least five (5) unauthorized automated text messages to his personal cell phone ending in 1527 from April 14, 2022, to July 3, 2022, from Defendant Slick platform soliciting business opportunities on behalf of Defendant Transport. *See "Exhibit A."*

45. The text messages Plaintiff received from Defendant Slick has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition, to wear and tear on his phone, interference with the use of his phone, and consumption of battery life.

46. Defendant Slick has been sued prior to this case being filed for violating the TCPA Kimble v. Jamnbean LLC et al No. 1:20-cv-00154-JTN-SJB (W.D.MI., Feb. 02, 2020) and refuse to alter their illegal behavior because each of their clients including Defendant Transport pays them a fee for using their text blast platform.

47. The text messages Plaintiff received from Defendant Slick's platform do not reveal Defendants true identity and do not address Plaintiff by name.

48. On July 23, 2022, In order to determine who was behind the text messages, Plaintiff clicked each of the links embedded in the text messages and was directed to https://intelliapp.driverapponline.com/c/autotruckusa?r=MYCO55%2F703%2Fgrp1&st-lid=13741382&uri_b=ia_autotruckusa_1497830171. This website contains an application to apply for a driving position with Defendant Transport. *See "Exhibit B."*

49. The application programming interface ("API") "slkt.io" displayed on the text messages Plaintiff received is owned and controlled by Defendant Slick which is found on their website they own and control https://www.slicktext.com. *See "Exhibit C."*

50. On July 28, 2022, Plaintiff spoke with Matthew T. Troha "Vice President and Deputy General Counsel" of Defendant Transport regarding the text messages Plaintiff received.

51. Mr. Troha advised Plaintiff that Defendant Transport does not call or send text messages to solicit their employment opportunities however hires third party companies to market and solicit on their behalf.

52. Table below displays the automated text messages made to Plaintiff by Defendant Slick's platform at the apparent control and authority of Defendant Transport:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 04/14/2022 | 11:18 AM | 877-509-0328 | Automated text message |
| 2. | 04/20/2022 | 6:00 PM | 877-509-0328 | Automated text message |
| 3. | 05/08/2022 | 12:01 PM | 877-509-0328 | Automated text message |
| 4. | 06/05/2022 | 9:46 AM | 877-509-0328 | Automated text message |
| 5. | 07/03/2022 | 9:31 AM | 877-509-0328 | Automated text message |

53. Each of the automated text messages came from phone number 877-509-0328. On July 24, 2022, Plaintiff called 877-509-0328 and discovered 877-509-0328 is not a working number.

54. The text messages Plaintiff received from Defendant Slick's platform were placed while knowingly ignoring the national do-not-call registry. The text messages were placed without Defendants training their agents/employees on the use of an internal do-not-call policy.

55. Plaintiff sent a request for Defendant Slick's internal do not call policy on July 28, 2022, to info@slicktext.com which is an email listed on their website they own and control https://www.slicktext.com.

56. Defendant Slick failed and/or refused to send Plaintiff a copy of any internal do not call policy.

57. Plaintiff sent a request for Defendant Transport's internal do not call policy on July 28, 2022, to mtroha@jhth.com which an email owned and controlled by Mr. Troha.

58. Mr. Troha failed and/or refused to send Plaintiff a copy of any internal do not call policy.

59. On information and belief, Defendants did not have a written do-not-call policy while they were sending Mr. Salaiz the text messages.

60. Defendants are not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain either of the Defendants' registration.

61. Defendants do not qualify for an exemption under § 302.101.

62. No emergency necessitated none of the alleged illegal automated text messages.

63. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

**VICARIOUS LIABILITY OF DEFENDANT TRANSPORT**

64. Defendant Transport is vicariously liable for the text messages that were generated to Plaintiff on their behalf.

65. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

66. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

67. The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

68. The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

11

69. More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

70. The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

71. To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

72. Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

73. Defendant Transport is legally responsible for ensuring the text messages Defendant Slick's platform made on their behalf comply with the TCPA.

74. Defendant Transport knew (or reasonably should have known) that Defendant Slick's platform was violating the TCPA on their behalf but failed to take effective steps within their power to force the Defendant Slick to cease that conduct.

75. By hiring a company to generate text messages on its behalf, Defendant Transport "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

76. Moreover, Defendant Transport maintained interim control over the action of Defendant Slick.

77. Furthermore, Defendant Transport had day-to-day control over the actions of Defendant Slick's platform, including the ability to prohibit them from using an ATDS to contact potential employers of Defendant Transport and the ability to require them to respect the National Do Not Call Registry.

78. Defendant Transport enrolled into Defendant Slick's text blast platform and gave Defendant Slick apparent authority to make the text messages at issue. Thus, the Defendant Slick's platform pitched "employer opportunity" services in the abstract.

79. Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

80. "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

81. A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

82. Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

13

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

Defendant Transport is the liable party as the direct beneficiary of the text messages as they stood to gain Plaintiff as a employee when Defendant Slick's platform solicited Plaintiff for employment opportunities on their behalf.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

83. Defendants' automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

84. Defendants' automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

85. Defendants' automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

86. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### The Plaintiff's cell phone is a residential number

87. The text messages were to Plaintiff's cellular phone ending in 1527 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

88. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendants violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

89. The text messages by the Defendants violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code 302.101

90. The actions of Defendants violated the Texas Business and Commerce Code § 302.101 by placing solicitation automated text messages to Plaintiff, a Texas resident, without having a valid solicitation registration certificate and a valid bond.

91. Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of § 302.101.

### CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

92. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93. Defendants and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least five (5) times by placing non-emergency telemarketing text messages

to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

94. Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the text messages described above, in the amount of $500.00 per call.

95. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

96. Plaintiff is also entitled to and does seek an injunction prohibiting Defendants and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing text messages to any cellular telephone number using an ATDS and/or without prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

97. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

98. Defendants sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

99. Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telemarketing text messages described above, in the amount of $500.00 per call.

100. Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

101. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

102. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

103. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

      c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

104. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

105. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR:
**Violations of The Texas Business and Commerce Code 305.053**

106. Plaintiff incorporates the foregoing allegations as if set forth herein.

107. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing automated text messages to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

108. Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

109. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

## COUNT FIVE:
**(Violations of The Texas Business and Commerce Code 302.101)**

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

18

110.    Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

111.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation automated text messages to Plaintiff's cellular telephone number without his prior express written consent.

112.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An award of $1500 per text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for five automated text messages.

D. An award of $1500 per text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for five automated text messages.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.  An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.  An award to Plaintiff of damages, as allowed by law under the TCPA;

H.  An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

I.  Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

August 1, 2022,                    Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-929-1527
Salaiz.ep@gmail.com